345 So.2d 1271 (1977)
AIRTROL ENGINEERING COMPANY, INC.
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY.
No. 11310.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
*1272 John S. Thibaut, Jr., Baton Rouge, of counsel for plaintiff Airtrol Engineering Co., Inc., appellee.
Ben Louis Day, Baton Rouge, of counsel for defendant United States Fidelity and Guaranty Co., appellant.
Before ELLIS, CHIASSON and PONDER, JJ.
PONDER, Judge.
Plaintiff sued defendant, a bonding company, for the added amount plaintiff paid for completion of a subcontract when the principal on the bond defaulted. Defendant appealed the allowance of the claim.
Defendant asserts the lower court erred in:
1. Finding payments made by plaintiff to the principal were not advance payments prejudicial to defendant;
2. Finding the contract between plaintiff and the principal contained no restrictions against payments such as those made by plaintiff;
3. Construing the contract so as to violate the "best evidence rule."
We reverse and render.
Plaintiff was an air conditioning subcontractor on an LSU building. A-1 Roofing and Metal Works, Inc., contracted to provide plaintiff the required sheetmetal and duct work, the contract consisting of a purchase order with the words "F.O.B. jobsite installed" typed in. Defendant executed the performance bond for A-1. About two weeks later A-1 billed plaintiff for $15,000.00, representing the invoice to be for labor and materials expended in partial performance. Seven months later, A-1 presented another invoice for $9,400.00, representing the cost of additional labor and materials. Plaintiff paid both invoices.
From February to December, 1973, plaintiff gave defendant a series of status reports showing no work done in February, three per cent completed in May, five percent completed in August, September and December.
Subsequently, A-1 defaulted and underwent involuntary bankruptcy proceedings. Plaintiff entered into another contract for completion of the work, at a cost of $460,000.00, plus the cost of the surety bond.
The trial court found that plaintiff had spent a total of $484,400.00, the second contract price plus the $24,400.00 paid to A-1 Roofing. Since A-1 Roofing had contracted to do the work for $474,200.00, the court awarded plaintiff $10,200.00.
Defendant contends that the payments made by plaintiff to A-1 Roofing were advance payments which operated to its detriment, and it should therefore be relieved of the entire suretyship obligation or alternatively pro tanto. The trial judge *1273 found that the payments made by Airtrol were based on drawings, materials purchased and work performed by A-1, and were not advance payments.
The trial court also found that the payments by plaintiff to A-1 were not contrary to contractual provisions. Defendant's contrary argument is based on the theory that "F.O.B. jobsite installed" is a requirement that the materials be in place and installed before invoices could be paid.
Plaintiff's president testified that "F.O.B. jobsite installed" was automatically typed in on all contracts, because on federal government contracts all materials must be in place before payment can be made. This provision was not required on the LSU contract. However, the plans and specifications were not introduced and the failure was not explained. Furthermore, the "jobsite installed" provision was a part of the contract when defendant issued its bond. The cavalier attitude that the plaintiff had the prerogative to comply with or ignore the provision is not valid, once another entity, the bonding company, becomes a necessary participant.
The bonding company is entitled to expect that payments will be made in accordance with the contract. In Talbert v. Bounds & Allen, 123 So.2d 815 (La.App. 2nd Cir. 1960), a surety was discharged to the extent of premature payment by the owner. The court emphasized that the owner had violated strict provisions of his contract with the contractor by failing to retain a percentage of each progress payment, to be disbursed following completion of the contract. In Walters Air Conditioning Company, Inc. v. Firemen's Fund Insurance Company, 252 So.2d 919 (La.App. 2nd Cir. 1971), a surety was discharged to the extent of premature payments made by an owner pursuant to a judgment. The contract required that payments were to be made only after the work had been approved and accepted. The surety had also advised the owner that it objected to payments in violation of the contract.
The court below was of the opinion that the payments made by plaintiff were based on drawings, materials purchased and other work done by A-1. Plaintiff contends that the shop drawings, which were used by the second contractor, became "jobsite installed," when they became finished. Even if we accept this contention it certainly does not apply to the bond premium. As a matter of fact, the bond premium, positively stated by plaintiff's president to be in the first payment, was not included within the protection of the bond at all. The amount of $3,432.00 will be deducted from the $15,000.00, leaving $11,568.00 covered by the bond.
We cannot agree that the labor and materials of the second invoice were "jobsite installed." The only testimony supporting the payment at all is some vague statements of raw materials being in the shop. It follows that the payment of $9,400.00 was in violation of the terms of the contract.
Plaintiff's contention that the bond covered the entire bid price which included overhead, intangibles and profits and that therefore payments for these were properly made flies is the fact of the contractual requirement of "jobsite installed," and is therefore without merit.
We hold that the lower court erred in finding that the payment of $9,400.00 was not in derogation of any contractual restrictions and that the payment of $3,432.00 of the $15,000.00 payment was covered by the bond. The second contract price of $460,000.00 plus the $11,568.00 covered by the bond amounted to less than the original contract price. The defendant therefore can have no liability.
Our holding obviates the necessity of considering the possible violation of the "best evidence" rule.
For these reasons the judgment of the lower court is reversed and there is judgment herein dismissing plaintiff's suit at its costs.
REVERSED AND RENDERED.